UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

OLD SAN JUAN

```
------------------------------------------------------------- X
```

In re:                                          Chapter 11

SERVICIOS DE DESCUENTO EN COMPRA,               No. 09-00832 (ESL)
INC. a/k/a SECECO,

                Debtor.

```
------------------------------------------------------------- X
```

**MOTION OF WPR SABANA LP, S.E. FOR ENTRY OF AN ORDER (I) REQUIRING THE TRUSTEE'S AND/OR THE DEBTOR'S IMMEDIATE SURRENDER OF PREMISES PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE AND (II) ABANDONING PROPERTY OF THE ESTATE PURSUANT TO SECTION 554(b) OF THE BANKRUPTCY CODE**

TO THE HONORABLE ENRIQUE S. LAMOUTTE,
UNITED STATES BANKRUPTCY JUDGE:

WPR Sabana LP, S.E. ("WPR"), by and through its undersigned counsel, files this motion (this "Motion") seeking entry of an order (i) requiring the Liquidating Trustee's (the "Trustee") and/or the Debtor's immediate surrender of the non-residential premises located at Lot 13-17B, Sabana Gardens Industrial Park, Carolina, Puerto Rico (the "Premises") pursuant to sections 365(g) of Title 11 of the United States Code (the "Bankruptcy Code") and (ii) abandoning to WPR all of the Debtor's inventory, movable property and miscellaneous assets located at the Premises pursuant to section 554(b) of the Bankruptcy Code, and respectfully represents the following:

## PRELIMINARY STATEMENT

1.      In the more than six months that have passed since the Court confirmed the Debtor's chapter 11 plan (the "Chapter 11 Plan") in September 2010, no action has been taken by the Debtor or the Trustee to consummate the Chapter 11 Plan, which was supported by

creditors and approved by this Court based on the Debtor's representations that the liquidation of

its assets (and the sale of certain real estate owned by one of its affiliates)[1] would yield proceeds

sufficient to provide for (a) full payment of administrative expense priority claims against the

Debtor and (b) a meaningful distribution to general unsecured creditors.  Not a single asset of the

Debtor or its affiliate has been sold in furtherance of the Chapter 11 Plan and no creditor

distribution has been made – all notwithstanding the fact that WPR is aware of, or has been

contacted by, a number of parties interested in purchasing these assets.  Put simply, neither the

Trustee nor the Debtor has evidenced any intent to move forward with the planned liquidation of

assets and consummation of the Chapter 11 Plan.  Perhaps even more disconcerting, no effort has

been made to secure the Debtor's assets (substantially all of which are located on the Premises),

minimize the risk of theft or damage thereto and preserve their value for the benefit of the

creditors of this estate who have been left holding the bag.  More troubling to WPR is that the

assets continue to occupy more than 80,000 square feet of the Premises and this estate continues

to accrue use and occupancy charges (including rent, patente and real estate taxes) with no

apparent means to satisfy WPR's growing administrative expense priority claim.

2.       WPR holds an administrative expense priority claim against the Debtor in the

amount of **$736,854.58**[2] and is believed to be the Debtor's largest administrative creditor.

Neither the Debtor nor the Trustee has paid WPR on account of the Debtor's post-rejection use

and occupancy of the Premises – which obligations continue to accrue as administrative priority

expenses of this estate to the detriment of all creditors of the Debtor, while simultaneously

---

[1]      Upon information and belief following independent diligence conducted by WPR, the Carolina property –
which is the only parcel of real property pledged under the Chapter 11 Plan having any real value – is fully
encumbered by a mortgage note payable to Banco Popular.  WPR has not been able to identify any disclosure by the
Debtor of this critical fact to its creditors or this Court.

[2]      Includes (i) the WPR Administrative Claim (defined below), as previously allowed by the Court in the
amount of $496,066.79 and (ii) $240,787.79 for post-October 31, 2010 obligations (rent, patente and real estate
taxes) which have accrued on account of the Debtor's post-rejection use and occupancy of the Premises as a
holdover tenant.

depriving WPR of the opportunity to re-let the premises to a paying tenant. With no reasonable prospect of payment on the horizon, WPR is compelled to file the instant motion to obtain the Debtor's and/or Trustee's immediate surrender of the Premises pursuant to section 365(d)(4) and (g) of the Bankruptcy Code. Furthermore, given the Debtor's and/or Trustee's failure to sell the assets of the Debtor and its affiliate as directed under the Chapter 11 Plan – clear evidence of the inconsequential value of these assets to the estate – WPR requests that the Court direct the abandonment of such assets to WPR pursuant to section 554(b) of the Bankruptcy Code. WPR can ill afford to continue financing this chapter 11 case on an involuntary basis and respectfully requests the Court to grant the relief requested herein.

## **BACKGROUND**

3.      On February 6, 2009, (the "Petition Date"), Servicios de Descuento en Compra a/k/a Sedeco (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, prior to the appointment of the Trustee on September 21, 2010, was managing its affairs and assets pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.      Prior to the Petition Date, Debtor, as tenant, and WPR, as landlord, were parties to a lease contract as to a building located at Lot 13-17B, Sabana Gardens Industrial Park, Carolina, Puerto Rico (the "Warehouse"), consisting of 121,462 square feet (as amended and modified pursuant to the Assumption Order (defined below), the "Warehouse Lease").[3]

5.      On May 7, 2009, following substantial negotiations between the parties, the Debtor filed that *Application For Leave to Assume Lease Agreements With WPR Sabana LP, S.E. and WPR Victoria LP, S.E.* (Doc. No. 64) (the "Assumption Motion"), pursuant to which the

---

[3]      Additionally, prior to the Petition Date, Debtor, as tenant, and WPR, as landlord, were parties to a lease contract as to a building located at Building #2 in Victoria Industrial Park, Carolina, Puerto Rico, consisting of 20,240 square feet (the "Store Lease" and together with the Warehouse Lease, the "Leases").

Debtor sought authorization to assume the Leases on the agreed upon terms and conditions set forth therein.

6.      On May 8, 2009, the Court entered an Order granting the Assumption Motion on the condition that no objection be filed during the twenty (20) days following service of the Assumption Motion (Doc. No. 65) (the "Assumption Order").  The Assumption Motion was served on May 10, 2009 (Doc. No. 66).  No objection to the Assumption Motion was filed and the Assumption Order took effect on May 30, 2009.

7.      On March 12, 2010, the Debtor filed that *Motion For Leave to Reject Previously Assumed Non-Residential Lease Contracts* (Doc. No. 314) (the "Rejection Motion"), pursuant to which the Debtor sought, *inter alia*, authorization to reject the Leases on the terms and conditions set forth in the respective Letter Agreements dated March 5, 2010 between the Debtor and WPR (annexed to the Rejection Motion as Exhibit A).  On June 10, 2010, the Court entered an Order granting the Rejection Motion in all respects (Doc. No. 413) (the "Rejection Order").

8.      Pursuant to the Letter Agreement governing the Debtor's rejection of the Warehouse Lease, the Debtor's rejection of the Warehouse Lease is effective as of October 31, 2010.

9.      On September 21, 2010 (the "Plan Confirmation Date"), the Debtor's Chapter 11 Plan was confirmed by this Court and the Trustee was appointed.

10.     As confirmed by this Court, the Chapter 11 Plan provides that Holders of Allowed Administrative Expense Claims (as such terms are defined in the Chapter 11 Plan) will receive payment in full on account of their allowed claims from the proceeds of the sale of the Debtor's assets, including:  (i) all of the Debtor's inventory (aggregate value of $1,192,540 according to the Chapter 11 Plan); (ii) movable property and miscellaneous assets, including 12 thirty-foot trucks and an inventory racking system (aggregate value of $697,155 according to the Chapter

4

11 Plan); and (iii) three parcels of real estate owned by N&H, SE which were to be transferred to the Debtor's estate under the Chapter 11 Plan in satisfaction of N&H, SE's outstanding debt to the Debtor (aggregate value of $2,475,000 according to the Chapter 11 Plan) (collectively, the "Assets").

11.    On October 30, 2010, WPR filed a motion requesting entry of an Order (i) allowing its administrative claims in the aggregate amount of $496,066.79, which amount includes unpaid postpetition rent under the Warehouse Lease only through October 31, 2010 (the effective date of rejection of the Warehouse Lease) (the "WPR Administrative Claim") and (ii) directing the Trustee to pay the WPR Administrative Claim in accordance with the terms of the Chapter 11 Plan.   On November 18, 2010, the Court entered an order allowing the WPR Administrative Claim.

12.    The Trustee and/or the Debtor have occupied, and continue to occupy on an uninterrupted basis, the Premises post-confirmation and post-rejection for administrative use and storage on account of the anticipated liquidation of the Assets.   Neither the Trustee nor the Debtor has paid WPR with respect to the post-confirmation or post-rejection use and occupancy of the Premises.

## JURISDICTION AND STATUTORY PREDICATES

13.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.   The statutory predicate for the relief requested herein is sections 105(a), 365(d)(4) and (g) and 554(b) of the Bankruptcy Code. WPR is proceeding in accordance with Federal and Local Bankruptcy Rules 6006, 6007, 9013 and 9014 as amended or supplemented by the provisions of General Order 09-02 of this Honorable Court.

## REQUESTED RELIEF AND REASONS THEREFOR

14.     By this request, WPR seeks the entry of an order requiring the Trustee's and/or the Debtor to (i) immediately surrender the Premises to WPR and (ii) abandon to WPR all of the Debtor's inventory, movable property and miscellaneous assets, including without limitation all trucks and racking systems, that are presently located in or around the Premises.

### A.     WPR IS ENTITLED TO IMMEDIATE SURRENDER OF THE PREMISES AS THE WAREHOUSE LEASE WAS REJECTED AND TERMINATED

15.     Pursuant to the Letter Agreement governing the Debtor's rejection of the Warehouse Lease, as approved by the Rejection Order, the Debtor's rejection of the Warehouse Lease was effective as of October 31, 2010.  For most executory contracts, rejection represents nothing more than a breach of the agreement.  11 U.S.C. § 365(g).  However, in the context of a rejection of a nonresidential real property lease, rejection operates to terminate the lease.  *In re Southwest Aircraft Servs., Inc.*, 66 B.R. 121, 123 (9th Cir. BAP 1986), *rev'd on other grounds*, 831 F2d 848 (9th Cir. 1987), *cert. denied*, 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988); *In re Chris-Kay Foods East, Inc.*, 118 B.R. 70, 72 (Bankr.E.D.Mich.1990).  Accordingly, following rejection, neither the Debtor nor the estate had any possessory interest in the Premises.

16.     Section 365(d)(4) also dictates that the trustee or debtor-in-possession must surrender possession of the premises subject to a rejected non-residential real property lease.  11 U.S.C. § 365(d)(4).  Courts have consistently held that the rejection of a non-residential real property lease represents a termination of the lease in which the debtor or trustee is the lessee. *See Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1080 (9th Cir. 1989) ("Moreover, after a lease is deemed rejected under section 365(d)(4), the trustee or debtor in possession must 'immediately surrender' the leased property to the lessor . . . If Congress intended passive

6

rejection of a lease to be subject to court approval, it would not have required the drastic step of immediate surrender.") (citations omitted).[4]

17.    Furthermore, courts have routinely held that because rejection of a nonresidential real property lease constitutes a termination of the lease, rather than a mere breach of the lease, it is unnecessary to consider whether the party seeking surrender would have the equivalent right under any applicable state law.  *In re Southwest Aircraft Services, Inc.*, 53 B.R. at 810 ("Southwest cannot seriously argue in light of the Supremacy Clause that § 365(d)(4), a federal law, may be modified by California laws.  Such a resort to California law would emasculate § 365(d)(4), clearly not the intent of Congress.").[5]  Consequently, whether WPR would be legally entitled to compel the surrender of the Premises under Puerto Rico state law is of no moment to the Court's determination of the relief requested herein.

18.    For the reasons set forth herein, WPR respectfully requests entry of an order directing the Debtor's and/or Trustee's immediate surrender of the Premises pursuant to section 365(d)(4) and (g) of the Bankruptcy Code.

**B.    THE DEBTOR'S INVENTORY, MOVABLE PROPERTY AND MISCELLANEOUS ASSETS LOCATED IN OR AROUND THE PREMISES ARE OF INCONSEQUENTIAL VALUE TO THE ESTATE AND SHOULD BE ABANDONED TO WPR**

---

[4]    *See also In re Henderson*, 245 B.R. 449, 453 (Bankr. S.D.N.Y. 2000) ("Where the trustee rejects a non-residential real property lease, he must immediately surrender the property to the lessor. In such a case, rejection is tantamount to termination.") (citations omitted); *In re 6177 Realty Assocs., Inc.*, 142 B.R. 1017, (Bankr. S.D. Fla. 1992) (requiring trustee to immediate surrender premises and stating that "I nevertheless agree with the majority of cases which hold that rejection does equal termination of non-residential real property leases in which the debtor or Trustee is the lessee") (citations omitted); *In re Giles Associates, Ltd.*, 92 B.R. 695, 697 (Bankr. W.D. Tex. 1988) ("Further, the statute is clear. Failure to act results in first rejection and next in an absolute obligation to surrender the premises . . . "); *In re Southwest Aircraft Services, Inc.*, 53 B.R. 805, 809 (Bankr. C.D. Cal. 1985) ("The additional mandate found in § 365(d)(4) requiring *immediate* surrender of the property to the lessor upon rejection, emphasizes the clear Congressional intent that § 365(d)(4) be strictly construed.") (emphasis supplied).

[5]    *See also In re 6177 Realty Assocs., Inc.* 142 B.R. at 1020 ("§365(d)(4) is not affected by separate state law doctrines concerning the termination of leases"); *In re Giles Assocs., Ltd.*, 92 B.R. at 696 ("It is very clear that the federal policy concerning leases and inaction on the part [of] the debtor-lessor clearly supersedes any state law considerations.").

19.     Section 554(b) of the Bankruptcy Code provides: "on request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b); *see In re Pilz Compact Disc, Inc.*, 229 B.R. 630, 645 (Bankr. E.D. Pa. 1999) (authorizing debtor to abandon inventory that was not a useful asset to the bankruptcy estate). The party seeking abandonment bears the burden of proving the property is either burdensome or of inconsequential benefit and value. *In re Alexander*, 289 B.R. 711, 715 (B.A.P. 8th Cir. 2003).

20.     Courts have found that abandonment is appropriate under circumstances where there is no concrete evidence of value to the bankruptcy estate. *See In re Nelson*, 251 B.R. 857, 861(B.A.P. 8th Cir. 2000) (affirming order compelling abandonment where trustee presents only a speculative scenario giving rise to value for the bankruptcy estate from two parcels of over-encumbered real property); *In re Thornton*, 269 B.R. 682, 685 (Bankr. W.D. Mo. 2001) (granting request for abandonment of property that would only result in recovery of $1,119.51 to apply toward debtor's unsecured debt of nearly $67,000.00). The party opposing abandonment must demonstrate the likely benefit to the estate of retaining the property. Speculation and conjecture are not sufficient to defeat a motion to abandon. *See Nelson*, 251 B.R. at 860.

21.     That not a single asset of this estate has been sold or liquidated in the more than six months that have passed since the Court confirmed the Chapter 11 Plan is clear evidence that Assets are of inconsequential value to this estate. Further evidence of inconsequential value is found by the absence of any effort on the part of the Debtor and Trustee to secure the Assets, minimize the risk of theft or damage thereto and preserve their value for the benefit of the Debtor's estate and creditors. Moreover, these Assets are plainly burdensome to this estate, which continues to accrue, but not pay, substantial administrative expense priority indebtedness

8

to WPR for its use and occupancy of the Premises. Based on the record before the Court, WPR is extremely unlikely to recover full payment from the Debtor on account of its continually increasing administrative expense priority claim. Accordingly, the Debtor's inventory, movable property and miscellaneous assets located in or around the Premises should be abandoned to WPR, who, unlike the Debtor and/or Trustee, is incentivized to sell these assets and perhaps recoup a fraction of its claim.

**WHEREFORE,** WPR respectfully requests entry of an order requiring the Trustee and/or the Debtor to (i) immediately surrender the Premises to WPR and (ii) abandon to WPR all of the Debtor's inventory, movable property and miscellaneous assets, including without limitation all trucks and racking systems, that are presently located in or around the Premises.

## NOTICE OF TIME TO RESPOND OR OBJECT

WITHIN FOURTEEN (14) DAYS AFTER SERVICE AS EVIDENCED BY THE CERTIFICATION, AND AN ADDITIONAL THREE (3) DAYS PURSUANT TO FED. R. BANK. P. 9006(f) IF YOU WERE SERVED BY MAIL, ANY PARTY AGAINST WHOM THIS PAPER HAS BEEN SERVED, OR ANY OTHER PARTY TO THE ACTION WHO OBJECTS TO THE RELIEF SOUGHT HEREIN, SHALL SERVE AND FILE AN OBJECTION OR OTHER APPROPRIATE RESPONSE TO THIS PAPER WITH THE CLERK'S OFFICE OF THE U.S. BANKRUPTCY COURT FOR THE DISTRICT OF PUERTO RICO. IF NO OBJECTION OR OTHER RESPONSE IS FILED WITHIN THE TIME ALLOWED HEREIN, THE PAPER WILL BE DEEMED UNOPPOSED AND MAY BE GRANTED UNLESS THE REQUESTED RELIEF IS FOBIDDEN BY LAW, OR THE REQUESTED RELIEF IS AGAINST PUBLIC POLICY OR IN THE OPINION OF THE COURT, THE INTEREST OF JUSTICE REQUIRES OTHERWISE.

Respectfully submitted, in Arecibo, Puerto Rico, this 4th day of April, 2011.

By:     /s Edwin Matos Maldonado, Esq.

*BUFETE ZENO GLORO*
FELIX M ZENO GLORO
USDC 124212
EDWIN MATOS MALDONADO
USDC 226403
LIAVANESSA FONTANEZ RUIZ

9

USDC 213707

PO BOX 1945; ARECIBO PR 00613
TEL 879-1760 ; FAX 880-2756
tribunal@zenogloro.com

- and -

COOLEY LLP
1114 Avenue of the Americas
New York, New York 01136
(212) 479-6000
Seth Van Aalten, Esq.
svanaalten@cooley.com

- and -

Gustavo A. Ordóñez, Esq.
222-03 Kingsbury Avenue
Hollis Hills, New York 11364
gordonez1234@me.com

*Counsel for WPR Sabana LP, S.E.*

10

## CERTIFICATE OF SERVICE

I hereby certify that on this same date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of such filing to all CM/ECF participants, including the U.S Trustee, counsel of record for the Debtor, Charles A. Cuprill, Esq. and/or Fernando E Longo, Esq., the Liquidation Trustee, Wigberto Lugo Mender, Esq., counsel for the Unsecured Creditor's Committee, and all other interested parties with an email on file with the Clerk of Court.

Respectfully submitted, in Arecibo, Puerto Rico, this 4 day of April, 2011.

By:     /s Edwin Matos Maldonado, Esq.

*BUFETE ZENO GLORO*
FELIX M ZENO GLORO
USDC 124212
EDWIN MATOS MALDONADO
USDC 226403
LIAVANESSA FONTANEZ RUIZ
USDC 213707

PO BOX 1945; ARECIBO PR 00613
TEL 879-1760 ; FAX 880-2756
tribunal@zenogloro.com

- and -

COOLEY LLP
1114 Avenue of the Americas
New York, New York 01136
(212) 479-6000
Seth Van Aalten, Esq.
svanaalten@cooley.com

- and -

Gustavo A. Ordóñez, Esq.
222-03 Kingsbury Avenue
Hollis Hills, New York 11364
gordonez1234@me.com

*Counsel for WPR Sabana LP, S.E.*

11